665 P.2d 721

**Richard ROLL, Sr., Claimant-appellant,**

v.

**CITY OF MIDDLETON, Employer, Defendant-respondent,**

and

**Idaho Dept. of Employment, Respondent.**

No. 14460.

Supreme Court of Idaho.

June 23, 1983.

Roderick D. Gere, Eagle, for claimant-appellant.

Wayne E. Davis, Caldwell, for defendant-respondent City of Middleton.

Larry F. Weeks, Deputy Atty. Gen., Boise, for respondent Dept. of Employment.

BAKES, Justice.

The City of Middleton, defendant respondent, discharged the claimant appellant, Richard Roll, who had been employed as a general laborer for several years, on February 27, 1981. Claimant filed for unemployment insurance benefits, to be effective March 1, 1981. In a separation statement filed with the Department of Employment, the City of Middleton listed the following reasons for claimant's dismissal: excessive tardiness or abuse of sick leave; improper use of city property or equipment; and habitual improper use of sick leave privileges. The Department of Employment determined that the claimant had been terminated for misconduct in connection with his work and that he was ineligible for unemployment benefits. Claimant appealed that decision.

The redetermination stage was bypassed, and on April 24, 1981, an appeals examiner for the Department of Employment held a hearing on appellant's claim. Testimony before the appeals examiner established that claimant had been late to work many times between October, 1979, and February 2, 1981. Mr. Jerry Aldrich, claimant's supervisor, testified that claimant had received three written warnings regarding his tardiness and that he had been warned orally on five or six occasions. Claimant did not deny being tardy, but stated that his tardiness was often due to a stalled automobile.

Evidence was presented at the hearing that claimant had been absent from work some twenty-one days from January 1, 1980, to February 27, 1981. Mr. Aldrich testified that claimant had been seen on days that he was absent from work due to illness engaged in activity inconsistent with his reported illnesses, such as driving his car in both Caldwell and Middleton, and loading or unloading cans at his brother's place of business.

Finally, evidence presented at the hearing established that in January, 1981, claimant had borrowed a saw from the city for his personal use. Although disputed, Mr. Aldrich testified that claimant had not received permission to borrow the saw. Mr. Aldrich further testified that when claimant was requested to return the saw, he failed to return it until several days later, after a written warning had issued.

The appeals examiner reviewed the evidence and, in a decision dated March 19, 1981, determined that misconduct had not been established as the basis for claimant's discharge and that claimant was eligible for unemployment benefits effective March 1, 1981.

Respondent City of Middleton appealed the decision of the appeals examiner to the Idaho Industrial Commission, which, after two continuances, scheduled a hearing for October 7, 1981. Claimant did not appear at the hearing, but the record before the presiding referee contained the transcript of the hearing held by the appeals examiner. Respondent City of Middleton presented additional evidence, including testimony that: claimant regularly was late for work, both in the morning and after lunch; claimant had been repeatedly warned, several times in writing, after which he would only temporarily improve; fellow workers and citizens had complained of claimant's tardiness and inefficiency at work; claimant spent too much time sloughing off and "vis-

iting" during working hours; claimant's habitual tardiness delayed the work crews; that claimant had been informed of the respondent's dissatisfaction with his performance; and, that claimant had been given ample opportunity to improve his performance before it was finally decided to discharge him.

In findings of fact, conclusions of law and order, the Industrial Commission referee found that "the Claimant was discharged as a result of the Employer's dissatisfaction with his job attitude and performance and his habitual tardiness." The referee concluded that claimant was discharged for misconduct in connection with his employment and was ineligible for unemployment insurance benefits. The Industrial Commission approved and adopted the findings of fact and order, and claimant appealed. We affirm.

■ Findings of the Industrial Commission will be disturbed on appeal only when the findings of fact and conclusions of law entered thereon are unsupported by substantial and competent evidence. *See* Id. Const. Art. 5, § 9; *Foote v. Gritman Memorial Hospital,* 101 Idaho 93, 609 P.2d 160 (1980); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978). The principal issue presented in this case is whether there is substantial and competent evidence in the record to support the findings and conclusions of the Industrial Commission referee that claimant appellant was discharged for employment-related misconduct and therefore ineligible for unemployment compensation benefits.

■ An employee who has been discharged from employment on grounds of work-related misconduct is ineligible for unemployment compensation benefits. I.C. § 72–1366(e); *Dingley v. Boise Cascade Corp.,* 104 Idaho 476, 660 P.2d 941 (1983). This Court has long defined employee misconduct that serves to disqualify a claimant from receipt of unemployment compensation benefits as the

> "wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 548, 307 P.2d 217, 219 (1957).

*See also Parker v. St. Maries Plywood,* 101 Idaho 415, 614 P.2d 955 (1980); *Jenkins v. Agri-Lines Corp.,* 100 Idaho 549, 602 P.2d 47 (1979); *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976). When a claimant's eligibility for unemployment compensation benefits is challenged by the employer on the ground that the employment was terminated for misconduct, "the employer must carry the burden of proving that the employee was in fact discharged for employment-related misconduct." *Parker v. St. Maries Plywood, supra* at 419, 614 P.2d at 559.

The Industrial Commission referee found that: claimant was habitually late to work in the mornings; claimant had been warned both verbally and in writing of the respondent's dissatisfaction with his habitual tardiness and poor work performance; when warned, claimant would improve for awhile, then regress to his old work habits; and, that claimant had borrowed a saw from the city, allegedly without the supervisor's permission, and did not return it until demanded.[1]

---

1. While the Industrial Commission did not base its ultimate conclusion that claimant appellant was discharged for employment-related misconduct on the ground that he had abused his sick leave, the referee did enter the following finding:

> "The Claimant used 21 days of sick leave in his last 14 months of employment with the City. The City records show that for the calendar years of 1979 and 1980 the Claimant went to physicians on three separate occasions to obtain work releases, needed for his return to work. Apparently, he did not go to the physicians for medical care. The Claimant's supervisor called the Claimant at home on one occasion when the Claimant was using his sick leave. The supervisor had seen the Claimant driving around that morning and no one answered the telephone at the Claimant's residence in the late afternoon when the Employer attempted to contact the Claimant. The Employer did not believe that the Claimant was ill all 21 days that he called in ill to work."

■ The referee concluded that, "Claimant's discharge was a result of his habitual tardiness and his unsatisfactory work performance." Our review of the record discloses substantial and competent evidence, detailed above, to support the commission's findings and conclusions entered thereon. *See Matthews v. Bucyrus-Erie Co.,* 101 Idaho 657, 619 P.2d 1110 (1980) (court emphasized that employee misconduct includes disregard of standards of behavior which the employer has a right to expect of his employees and stated that disregard of an employer's standards of behavior need not have been "subjectively willful, intentional or deliberate.") *Supra* at 659, 619 P.2d at 1112. *See also Ortiz v. Armour & Co.,* 100 Idaho 363, 597 P.2d 606 (1979).

■ Claimant argues that he had not been guilty of any alleged act of misconduct for some three weeks prior to his termination and that, absent evidence of a precipitating act of misconduct triggering his dismissal, there is no evidence to support the commission's finding that claimant was actually discharged for employment-related misconduct. Not only is the evidence to the contrary, our review of the Employment Security Law, I.C. § 72–1301 *et seq.,* and Idaho case law discloses no requirement that there be a precipitating act of misconduct immediately prior to the termination of employment before a claimant may be denied unemployment benefits for employment-related misconduct. Instead, in *Weston v. Gritman Memorial Hospital,* 99 Idaho 717, 587 P.2d 1252 (1978), this Court focused on the claimant's course of conduct, including frequent tardiness and neglect of duties, over a two year period of employment with the hospital, rather than on any single event. In affirming the Industrial Commission's denial of unemployment compensation benefits, we stated:

> "[W]e are not considering a single incident or the violation of a comparatively innocuous rule, but rather a more or less continuous breach or disregard of impor-

tant rules or regulations." *Id.* at 720, 587 P.2d at 1255.

■ As in *Weston v. Gritman Memorial Hospital, supra,* claimant appellant's supervisor testified that his tardiness delayed other workers in the morning, and evidence was presented that appellant did not do his fair share of the work, in disregard of the reasonable expectations of his employer. Although appellant alleges that he had not been late to work since February 2, 1981, the date he received his last written warning, the record is clear that he was late to work on the day he was terminated, and claimant's supervisor testified at the Industrial Commission hearing as follows:

> "Q. Was there a tardiness problem in general during the last month?
> "A. [Supervisor] Yes, coming in late.
> "Q. During the last month that he work[ed]?
> "A. Yes.
> "Q. How about the last week?
> "A. Last week, yes."

Claimant's course of conduct showed a general disregard of the employer's rules requiring employees to report for work on time and the employer's right to expect its employees to work while on the job. *See Johns v. S.H. Kress & Co., supra,* 78 Idaho at 548, 307 P.2d at 219; *Weston v. Gritman Memorial Hospital, supra.* The findings of fact of the commission referee are supported by substantial and competent evidence as is the conclusion of law that claimant was discharged for employment-related misconduct.

■ Finally, claimant appellant raises a procedural issue, relying on *White v. Idaho Forest Industries,* 98 Idaho 784, 572 P.2d 887 (1977), arguing that his constitutional and statutory rights to receive notice of the issues to be heard by the Industrial Commission were violated in that the city raised new issues and in effect presented a substantially new case without first giving him

---

There was additional evidence before the appeals examiner that appellant had been seen unloading cans from his truck at his brother's shop on a day that he was absent from work allegedly due to illness. Furthermore, a co-worker testified at the Industrial Commission hearing that claimant repaired his parent's well on another occasion when he had called in sick.

fair notice. In *White, supra,* an appeals examiner had granted the employee-claimant unemployment benefits, ruling that the claimant had not been discharged for *misconduct.* The employer appealed that decision to the Industrial Commission, stating its intention to present new evidence on appeal. The claimant, however, did not receive similar notice. On review the Industrial Commission reversed the decision of the appeals examiner "on the previously unmentioned ground that White [the claimant] had '*failed without good cause to accept suitable work when offered.*'" *Supra* at 785, 572 P.2d at 888 (emphasis added). This issue was a separate statutory ground from the statutory ground of misconduct that had been decided by the appeals examiner and constituted a distinct ground of ineligibility for benefits. Because the claimant had not received notice that the new statutory issue would be presented, we reversed the decision of the Industrial Commission. *See also Luskin v. Dept. of Employment,* 100 Idaho 584, 602 P.2d 947 (1979); *Rogers v. Trim House,* 99 Idaho 746, 588 P.2d 945 (1979).

Our decision in *White,* however, is readily distinguishable from the case at bar. In this action, the Industrial Commission provided the parties with notice that "a hearing on review ... will be held ... *on all issues considered by the Appeals Examiner.*" The appeals examiner had framed the issue before her as whether "the claimant's unemployment is due to the fact that he was discharged for misconduct in connection with his employment." Both parties agreed with that statement of the issue. Hence, when given notice of the hearing on review, appellant was put on notice that the issue to be determined by the Industrial Commission was whether he had been discharged for work-related misconduct.

■ Under then effective I.C. § 72–1368(g), the Industrial Commission was entitled to receive additional evidence at the hearing on review. The evidence introduced by the City of Middleton before the Industrial Commission related to the same eligibility factor in question, claimant's alleged employment-related misconduct. Contrary to the appellant's contentions, the introduction of the new evidence did not amount to the injection of new issues or create a substantially new case at the Industrial Commission level. The notice of hearing sent to claimant appellant gave him fair notice of how the commission intended to proceed, *see Mager v. Garrett Freightlines, Inc.,* 100 Idaho 469, 600 P.2d 773 (1979), and the referee did not err in exercising its right to receive additional evidence on the issue in question, claimant appellant's employment-related misconduct. *See Rogers v. Trim House, supra* 99 Idaho at 750, 588 P.2d at 949.

There is substantial and competent evidence in the record to support the findings of fact and conclusions of law of the Industrial Commission, and, no reversible error having been shown, we affirm the decision of the Industrial Commission denying unemployment compensation benefits to the claimant appellant. Costs to respondent.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The author of the Court's opinion issued today has heretofore indicated rather strongly that a decision of the Industrial Commission borders on the sacrosanct, and sometimes the other members of the Court have been persuaded to agree with him. For my own part, however, I will only agree to the extent that the findings of fact of the Commission, when properly substantiated, should not be interfered with. But, on the other hand, with reference especially to appeals from the Department of Employment, where the decision is very often, as here, a mixed question of law and fact, I do not readily succumb to the philosophy of today's author, as is rather well documented in my separate opinion in *Comegys v. Air National Guard,* Idaho, 663 P.2d 648 (1983) (now pending on rehearing). Although a rule that this Court would be bound by the determination of the Commission when the issue presented is a mixed question of law and fact might be good for the sake of

administration, this Court has rejected such a rule. *See Woodhams v. Ore-Ida Foods, Inc.*, 101 Idaho 369, 371, 613 P.2d 380, 382 (1980) (Bistline, J., dissenting, noting that in *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957), the Court took unto itself the power to reverse determinations of the Commission when the issue presented is a mixed question of law and fact).

Now, with regard to the case of Richard Roll, I would be among the first to concede that the employer here, and ordinarily any employer, has the right to discharge an employee who is tardy for work on a frequent basis and whose job performance is not acceptable to the employer. But, as in *Comegys,* and as in *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976), how such amounts to misconduct within the provisions of the employer security law, I am wholly unable to see. The issue presented being one of a mixed question of law and fact, I respectfully dissent.